UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __11/15/2022__

----------------------------------------------------------------X
PATRICIA MOLINA,                              :
                                              :     **OPINION AND**
                            Plaintiff,        :     **ORDER**
                                              :
                                              :     21-CV-3869 (JLC)
        -v.-                                   :
                                              :
KILOLO KIJAKAZI,                              :
ACTING COMMISSIONER OF SOCIAL                 :
SECURITY,[1]                                  :
                                              :
                            Defendant.        :
----------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

Patricia Molina seeks judicial review of a final determination made by Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration, denying her applications for disability insurance benefits and supplemental security income under the Social Security Act. The parties have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Molina's motion is granted, the Commissioner's cross-motion is denied, and the case is remanded for further proceedings.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Acting Commissioner is substituted for the Commissioner as the defendant in this action.

# I.   BACKGROUND

## A. Procedural History

Molina applied for disability insurance benefits ("DIB") in December 2013 and for supplemental security income ("SSI") in February 2014.  Administrative Record ("AR"), Dkt. No. 12, at 100, 332.  Molina asserted an Alleged Onset Date ("AOD") of July 17, 2013.  AR at 342.  The Social Security Administration ("SSA") denied Molina's claim on March 13, 2014.  *Id* at 159.  On May 16, 2014, Molina requested a hearing before an Administrative Law Judge ("ALJ").  *Id.* at 167. Molina, represented by counsel, appeared and testified at a hearing held on October 15, 2015 before ALJ Dennis G. Katz.  *Id.* at 35–48.  In a decision dated October 21, 2015, ALJ Katz found Molina disabled as defined in the Social Security Act as of July 17, 2013.  *Id.* at 114–25.

On February 19, 2016, after determining ALJ Katz's decision was not supported by substantial evidence under 20 C.F.R. §§ 404.970 and 416.1470, the Appeals Council remanded Molina's case to the ALJ for further proceedings.  *Id.* at 126–32.  Molina then appeared and testified at a supplemental hearing before ALJ Katz on November 22, 2016.  *Id.* at 49–70.  In a December 6, 2016 decision, ALJ Katz found Molina was not disabled from July 17, 2013 through the date of the decision.  *Id.* at 134–48.  On February 1, 2017, Molina requested the Appeals Council review ALJ Katz's December 6, 2016 decision.  *Id.* at 268–70.  More than two years later, on March 15, 2019, the Appeals Council remanded the case for further action.  *Id.* at 271.  Following the remand, Molina appeared and testified at

a hearing on December 17, 2019 before a different ALJ, Vincent M. Cascio.  *Id.* at
71–99.  ALJ Cascio issued a decision on January 15, 2020 finding Molina not
disabled and, thus, not entitled to benefits.  *Id.* at 10–23.  On March 13, 2020,
Molina requested review of the decision by the Appeals Council.  *Id.* at 328–31.  The
Appeals Council denied Molina's request for review on February 25, 2021, rendering
ALJ Cascio's decision the final agency decision.  *Id.* at 1.

Molina timely commenced this action on April 30, 2021, seeking judicial
review of the Commissioner's decision pursuant to 42 U.S.C. §405(g).  *See*
Complaint, Dkt. No. 1.  The Commissioner answered Molina's complaint by filing
the administrative record on December 20, 2021.  Dkt. No. 12.  On February 18,
2022, Molina moved for judgment on the pleadings and submitted a memorandum
of law in support of the motion.  Motion for Judgment on the Pleadings, Dkt. No. 14;
Memorandum of Law in Support of the Plaintiff's Motion for Judgment on the
Pleadings ("Pl. Mem."), Dkt. No. 15.  The Commissioner cross-moved for judgment
on the pleadings on August 10, 2022 and submitted a memorandum in support of
the cross-motion.  Notice of Cross-Motion for Judgment on the Pleadings, Dkt. No.
25; Memorandum of Law in Support of Commissioner's Cross-Motion for Judgment
on the Pleadings ("Def. Mem."), Dkt. No. 26.  No reply papers were filed.  Dkt. No.
28.

### B. Administrative Record

#### 1. Molina's Background

Molina was born on December 21, 1985 and lives in Yonkers, New York.  AR at 1, 100.  The highest level of education she has is a Bachelor's degree.  *Id* at 78.  Besides briefly working as a public relations agent from 2008 to 2010, Molina primarily worked in retail from 2001 to 2013.  *Id*. at 394, 389.  In July 2011, Molina slipped and fell at work, injuring her mid and lower back.  *Id*. at 448–49.  As a result of this incident and the injuries incurred, Molina alleged a disability for a closed period beginning on July 17, 2013 and ending on March 11, 2018.  *Id* at 76– 77, 332.

#### 2. Relevant Medical Evidence

Molina and the Commissioner have each provided a summary of the medical evidence contained in the administrative record.  *See* Pl. Mem. at 4–8; Def. Mem. at 3–11.  "The Court adopts these summaries, which do not materially conflict with each other, as accurate and complete for the purpose of considering the issues raised in this suit, except to the extent we discuss additional records below."  *Marinez v. Comm'r of Soc. Sec.*, 269 F. Supp. 3d 207, 210 (S.D.N.Y. 2017).  The Court will discuss the medical evidence pertinent to the adjudication of this case in Section II(B) below.

### 3. ALJ Hearing

####    a.    Molina's Testimony

On December 17, 2019, Molina appeared at a hearing before ALJ Cascio, represented by her attorney, Christopher Latham.  AR at 71.  Vocational Expert ("VE") Zachary Fosberg also appeared and testified.  *Id*.  At the time of the hearing, Molina was 33 years old, single, and living alone.  *Id*. at 77–78.  Molina worked for Uber at the time of the hearing, prior to which she worked for HSBC Bank in the Bronx from March 2018 until September of 2019.  *Id*. at 78–79.

The ALJ questioned Molina about her work history.  *Id*. at 79–81.  Molina testified that her first job "right out of college" was for American Income Life Insurance Company, where she worked in "public relations."  *Id*. at 81.  Molina explained that she worked a lot with union presidents, sent out mailers, and provided leads for insurance agents.  *Id*. at 81.  The ALJ inquired if that job was mostly conducted on a computer and in an office, to which Molina responded that she worked partly from home and partly in the office.  *Id*.  Based on the foregoing, the VE classified this period of Molina's prior work history as a "telephone solicitor." *Id*. at 93.  Molina also testified that she was working sales at a store called Karen Millen in 2011, when she had her accident.  *Id*. at 80.  After the accident, she explained that she was "out on workers comp" before going to work at Louis Vuitton in November 2011.  *Id*. at 79–80.  She further testified that she worked as a

salesperson at Louis Vuitton for almost one year, from November 2011 to September 2012,while also working at a restaurant called Jacaranda.  *Id*. at 80–81.[2]

The ALJ asked Molina why she stopped working in July 2013.  *Id*. at 81–83. Molina initially responded it was because she was "severely depressed" as a result of a five-year long worker's compensation case she was pursuing.  *Id*.  Molina also testified that she fell down a flight of stairs and hurt her back "pretty badly" after which it was hard for her to get a job "not having worked for a long time and going back to sales."  *Id*. at 84.  She explained that it was difficult for her to get a job in retail because she could not stand up for "that long"—she could walk for only  five to seven minutes before needing to take a break and her ability to sit was also impacted.  *Id*.  With respect to her ability to lift or carry things, Molina stated that she could not lift "anything heavy," and no more than a gallon of milk.  *Id*. at 84, 85. She further explained that she would not be able to carry a gallon of milk for a long distance, and would have to put it down shortly after picking it up.  *Id*. at 85.  With regard to her mobility and flexibility, Molina testified that, during the time period at issue, she could not bend over and touch her toes.  *Id*.  She stated she could pick things up off the table from a seated position and could also lift her arms over her head but that she could not "bend straight down" because "it would pinch a nerve." *Id*. at 85–86.  Molina explained that she was "okay" going up and down stairs as long as it was not more than two flights.  *Id*. at 86.

---

[2] Although Molina testified to working at Jacaranda at the same time she worked for Louis Vuitton, the Work History Report she provided indicates that she worked at the restaurant Jacaranda from June 26, 2012 to June 18, 2013. AR at 394.

The ALJ subsequently asked if Molina was prescribed pain medication for her back while she was injured. *Id*. at 87. She testified that she was initially given "Percocets" which made her very dizzy. After taking Percocet for a "while" she was prescribed something else with a different name that she did not remember. *Id*.

The ALJ then asked Molina about her psychological problems. *Id*. at 86. Molina explained that her situation "really took an emotional toll" on her and that she was "depressed all the time." *Id*. Molina stated that she had "severe anxiety" that was "through the roof." *Id*. She testified that she was treated by Dr. Debra Hirshkowitz during the worker's compensation case and that "she was very helpful." *Id*.[3] She stated that she was prescribed medication but did not remember the names. *Id*. at 87. Molina testified that she was not receiving treatment at the time of the hearing but that she sought counseling through her church. *Id*. The ALJ asked Molina what her routine was like at home while she was unemployed. *Id*. Molina explained she lost the place in which she was living so she stayed in a room at a friend's house. *Id*. Molina reiterated that she was "severely depressed" at this time. *Id*. She testified that she spent most her time applying to jobs and going on interviews. *Id*. When asked if she was able to cook, shop, do chores and clean, Molina responded that she was able to but "didn't have the drive to." *Id*. at 88. Molina explained that her only social life during this time was through church. *Id*. The ALJ asked if she was able to work prior to March 2018, to which Molina

---

[3] Both the ALJ decision and Molina's Memorandum of Law refer to "Dr. Hershkowitz." However, the medical records indicate the correct spelling is "Hirshkowitz." This opinion will spell the name in accordance with what is transcribed in the medical records.

responded that she would have "tried to work," but that she didn't know if she could sustain it because she was "really depressed." *Id*. at 88–89.

Molina's attorney followed up by questioning her about her ability to sit and also about her ability to do activities outside of the home. *Id*. at 89–91. In response to questions about her ability to sit at a desk during the time period in question, Molina testified that it would have been uncomfortable for her to do so. *Id*. at 89. She stated that she probably would have had to get up several times, move around in her seat, or need a seat cushion. *Id*. She testified that she could sit for seven to ten minutes before needing to get up and move around. *Id*. at 90. She clarified that she would have to get up and move around, not just stand up. *Id*. Molina testified that during the time period in question she was able to stand for less time than she was able to sit and that she could probably stand for four to six minutes at a time. *Id*. She explained that she did not do many activities outside of the home during the time in question, nor did she take any classes or babysit any children. *Id*. Again, Molina testified that all she did during that time was go to church. *Id*. at 91. She testified that before she started going to church it was hard for her to even leave her room because of her depression. *Id*.

### b. VE's Testimony

The VE identified three jobs that corresponded to Molina's prior work history: a receptionist, which is a semi-skilled job and is performed at a sedentary exertional level; a sales clerk, considered semi-skilled and performed at the light-exertional

level; and, telephone solicitor, semi-skilled work performed at the sedentary

exertional level.  *Id*. at 93.

The ALJ then posed three hypotheticals to the VE.  *Id*. at 93–96.  For the

first hypothetical, the ALJ asked the VE to consider an individual who can

> perform a full range of light work but with the following
> limitations: can occasionally climb ramps and stairs; can
> never climb ropes, ladders, or scaffolds; can occasionally
> stoop, balance, crouch, kneel or crawl; [can have] no
> exposure to unprotected heights or hazards machinery . . .
> . [T]he person can understand, remember, carry out
> simple routine, repetitive work related tasks with only
> occasional contact with the public.

*Id*. at 93–94.  The VE testified that such an individual could not do Molina's

relevant past work.  *Id*. at 94.  However, the VE testified that such an individual

could perform the jobs of inspector, assembler, and sorter.  *Id*.

The ALJ then posed a second hypothetical to the VE in which the capacity

from the first hypothetical was amended from a light-exertional level to a sedentary

level but the limitations were identical.  *Id*. at 94.  The VE testified that the

individual in the second hypothetical could not perform Molina's past relevant work

but that jobs existed in the national economy for such a person.  *Id*.  The VE

testified that the individual in the second hypothetical could perform the jobs of

publisher, sedentary inspector, and labeler.  *Id*. 94–95.

As a third hypothetical, the ALJ asked the VE to consider an individual who

can

> perform a full range of sedentary work with the following
> limitations: the person could not stand and walk two
> hours in an eight-hour work day; sit two hours in an
> eight-hour work day; never any . . . postural positions;

> occasional reaching overhead; frequent feeling, handling;
> never push, pull; no exposure, unprotected heights or
> hazardous machinery; the person can remember,
> understand, carry out, simple, routine, repetitive work
> task (sic) with only occasional contact with the public; and
> the person would be off-task 15 percent of the workday in
> addition to regularly scheduled breaks.

*Id.* at 95. The VE testified that the individual in the third hypothetical would be

unable to perform Molina's past work and that he would be unable to identify any

work that such an individual could perform. *Id.*

Finally, Molina's attorney posed a hypothetical to the VE. *Id.* at 96. Molina's

attorney asked the VE to consider an individual who

> had poor or no ability to deal with the public, was
> seriously limited in their ability to perform the following
> functions, and by seriously limited [he indicated] that the
> individual could only occasionally perform these
> functions, and that would be: relate to coworkers; to use
> judgement; to interact with supervisors; to function
> independently; to maintain attention and consideration;
> to demonstrate reliability; to relate predictably; and
> behave in an emotionally stable manner.

*Id.* at 96. The VE testified that such an individual would be unable to perform

Molina's past work and he was unable to identify any other work such an individual

could perform. *Id.*

### 4.  The ALJ's Decision

ALJ Cascio denied Molina's application on January 15, 2020. *Id.* at 10–23.

In doing so, the ALJ concluded that Molina was not disabled under sections 216(i)

and 223(d) of the Social Security Act from July 17, 2013 to March 11, 2018. *Id.* at

23.

In his analysis, the ALJ followed the five-step test set forth in the SSA regulations.  *Id.* at 15–23.  After determining that Molina met the insured status requirements of the Social Security Act through December 31, 2020, the ALJ found at step one that Molina had been "engaged in substantial gainful activity" from March 12, 2018 to the present.  *Id.* at 15.  However, the ALJ determined that "there ha[d] been a continuous 12 month period(s) during which the claimant did not engage in gainful activity."  *Id.* at 16.  Finding that Molina had not been engaged in gainful activity from July 17, 2013 to March 11, 2018, the ALJ's remaining findings addressed that period of time.  *Id.* at 16.

At step two, the ALJ found that from July 17, 2013 to March 11, 2018, Molina had the severe impairments of "bilateral sacroiliitis, lumbar myositis/myofascial pain syndrome, spondylosis of L5-S1, major depressive disorder, and anxiety disorder."  *Id.* at 16.  At step three, the ALJ determined that Molina did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R.  Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526)," based on the medical evidence and medical opinions in the record.  *Id.*  The ALJ specifically considered listings 1.02 *Major Dysfunction of a Joint* and 1.04 *Disorders of the Spine* and found that the record did not contain evidence of criteria necessary for a Listing.  *Id.*  With respect to her mental impairments, the ALJ primarily relied on mental status examinations and medical opinions from Molina's treating sources to find that she did not satisfy the "paragraph B" criteria because she had no more

11

than a mild limitation understanding, remembering or applying information, and no more than moderate limitations with regard to interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. *Id*. at 16–18.  The ALJ also determined that Molina did not satisfy the "paragraph C" criteria based on a lack of evidence to demonstrate satisfaction of the regulatory requirements.  *Id*. at 18.

Prior to step four, the ALJ assessed Molina's residual functional capacity ("RFC").  *Id*. at 18–22.  The ALJ concluded that during the relevant time period, Molina had the RFC

> to perform less than the full range of sedentary work. She was able to lift/carry and push/pull 10 pounds occasionally and less than 10 pounds frequently. During an eight-hour work day, she was able to sit for up to six hours and stand/walk for about two hours. She could occasionally climb ramps/stairs, stoop, balance, crouch, kneel, and crawl. She could not climb ropes/ladders/scaffolds. She could not be exposed to unprotected heights or hazardous machines. She was able to understand, remember, and carry out simple, routine, repetitive work tasks involving only occasional contact with the public.

*Id*. at 18.  In reaching this decision, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence."  *Id*. at 18.  The ALJ concluded that Molina's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effect of these symptoms [were] not entirely consistent with medical evidence and other evidence in the record."  *Id*. at 19.

The ALJ then assessed the medical opinion evidence.  *Id*. at 19–21.  The ALJ
gave less than controlling weight to the opinions of Molina's treating sources, Dr.
Robert L. Hecht and Dr. Paul Brisson.  *Id*. at 20.  The ALJ assigned "little weight"
to the treating physicians' opinions that Molina was totally disabled from November
2013 to December 2014 because he found them to be conclusory opinions on an issue
reserved to the Commissioner.  *Id*.  The ALJ also gave "limited weight" to Dr.
Hecht's May 2015 opinion and Dr. Brisson's November 2016 opinion because "the
extent of the limitations they identif[ied], particularly in the area of sitting [was]
not supported by objective findings of record."  *Id*. at 20.  In concluding that these
opinions were not supported by objective findings of record, the ALJ cited to
evidence of "tenderness, some lumbar range of motion loss, and occasionally
straight leg raise tests without gait abnormalities or extremity sensations/strength
deficits," "[d]iagnostic imaging [that] did not reveal more than mild abnormalities,"
Molina's conservative treatment measures, a lack of any record of treatment after
November 2016 and Molina's acknowledged daily activities during the time period
at issue.  *Id*.  The ALJ then assessed the opinions of Dr. Frank D. Oliveto and Dr.
Laurence Schulman, both of whom examined Molina one time for worker's
compensation insurance purposes.  *Id*.  The ALJ assigned "some weight" to the
opinions of Dr. Oliveto and Dr. Schulman "to the extent that they conclude[d]
[Molina] retained the ability to work," but the ALJ acknowledged that "the
persuasiveness of these opinions is limited" because they were given for worker's

compensation insurance purposes and did not provide a function-by-function evaluation of Molina's abilities. *Id.*

The ALJ then considered the medical opinions regarding Molina's mental impairments. *Id.* at 21. The ALJ assigned little weight to the global assessment of function ("GAF") scores given by Molina's treating physicians, Dr. Hirshkowitz and Dr. Howard Rombom, which indicated severe symptoms. *Id.* at 21. The ALJ also assigned little weight to their opinions that Molina had a "partial severe temporary disability throughout the period at issue" because those opinions concerned an issue reserved to the Commissioner. *Id.* Finally, the ALJ assigned little weight to a September 2015 opinion given by Dr. Edward Fitzsimmons for worker's compensation insurance purposes finding that Molina "had a moderate range of psychiatric impairment . . . which could lessen with psychiatric treatment and a return to some form of work." *Id.* The ALJ assigned little weight to Dr. Fitzsimmons' opinion because it was "based on a one-time examination that was not conducted with reference to disability guidelines," and because "disability determinations are reserved to the Commissioner." *Id.*

The ALJ gave "more weight" to the assessment of another one of Molina's psychiatric treating sources, Dr. Azim Etemadi. *Id.* Finding Dr. Etemadi's opinion that Molina "retained the ability to perform simple tasks with some limitation in her ability to interact with the public" to be consistent with other evidence in the record, the ALJ accorded "more weight" to that part of Dr. Etemadi's opinion. *Id.* The ALJ also gave "more weight" to Dr. Hirshkowitz's opinion that Molina "retained

14

the ability to perform simple tasks with some limitation in her ability to interact with the public" based on examinations she had performed and other evidence in the medical record. *Id.*

At step four, the ALJ determined that Molina was unable to perform any past relevant work. *Id.* at 22. At step five, after considering the vocational expert's testimony and Molina's demographic information, the ALJ concluded that from July 17, 2013 to March 11, 2018, Molina could have performed the jobs of polisher, inspector, and labeler, all of which exist in significant numbers in the national economy. *Id.* at 23. Accordingly, the ALJ concluded that Molina was not disabled from July 17, 2013 to March 11, 2018. *Id.*[4]

## II.   DISCUSSION

### A. Legal Standards

#### 1.  Judicial Review of the Commissioner's Decision

An individual may obtain judicial review of a final decision of the Commissioner "in the district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C. § 405(g). The district court must determine whether the Commissioner's final decision applied the correct legal standards and whether the decision is supported by "substantial evidence." *Butts v. Barnhart,* 388 F.3d 377, 384 (2d Cir. 2004). "Substantial evidence is more than a mere scintilla. It

---

[4] Although the conclusion of the ALJ's decision states that "[t]he claimant has not been under a disability . . . from July 17, 2013 through the date of the decision," the rest of the decision, as well as the ALJ hearing, make clear that the ALJ evaluated Molina's condition during the time period of July 17, 2013 to March 11, 2018. AR at 78–83.

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks and alterations omitted); *see also Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations . . . whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))).

The substantial evidence standard is a "very deferential standard of review." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The Court "must be careful not to substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a de novo review." *DeJesus v. Astrue*, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)) (internal quotation marks and alterations omitted). "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted).

In weighing whether substantial evidence exists to support the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417 (quoting *Mongeur v. Heckler*, 722

F.2d 1033, 1038 (2d Cir. 1983)).  On the basis of this review, the court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding . . . for a rehearing."  42 U.S.C. § 405(g).  However, "[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard, [the court has], on numerous occasions, remanded to the [Commissioner] for further development of the evidence."  *Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir. 1996) (quoting *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980)) (alteration in original).

## 2. Commissioner's Determination of Disability

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); *see also Colgan v. Kijakazi,* 22 F.4th 353, 357 (2d Cir. 2022).  Physical or mental impairments must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In assessing a claimant's impairments and determining whether they meet the statutory definition of disability, the Commissioner "must make a thorough

inquiry into the claimant's condition and must be mindful that 'the Social Security Act is a remedial statute, to be broadly construed and liberally applied.'" *Mongeur*, 722 F.2d at 1037 (quoting *Gold v. Sec'y of H.E.W.*, 463 F.2d 38, 41 (2d Cir. 1972)). Specifically, the Commissioner's decision must consider factors such as: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Id*. (citations omitted).

### a.   Five-Step Inquiry

"The Social Security Administration has outlined a 'five-step, sequential evaluation process' to determine whether a claimant is disabled[.]" *Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019) (citations omitted); 20 C.F.R. § 404.1520(a)(4).  First, the Commissioner must establish whether the claimant is presently employed.  *See* 20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is unemployed, the Commissioner goes to the second step and determines whether the claimant has a "severe" impairment restricting his or her ability to work.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant has such an impairment, the Commissioner moves to the third step and considers whether the medical severity of the impairment "meets or equals" a listing in Appendix One of Subpart P of the regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is considered disabled.  *See id.*; 20 C.F.R. § 404.1520(d).

If the claimant alleges a mental impairment, "the regulations further require that the [Commissioner] 'rate the degree of [the claimant's] functional limitation based on the extent to which [her] impairment(s) interferes with [her] ability to function independently, appropriately, effectively, and on a sustained basis.'" *Rosario v. Kijakazi*, No. 20-CV-5490 (JPC) (BCM), 2022 WL 875925, at *11 (S.D.N.Y. Mar. 15, 2022) (quoting 20 C.F.R. § 404.1520a(c)(2)), *adopted by* 2022 WL 976879 (Mar. 31, 2022). "The degree of functional limitation is rated in 'four broad functional areas,' including the claimant's ability to '[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.'" *Id.* (quoting 20 C.F.R. § 404.1520a(c)(3)). The Commissioner uses a five-point scale to determine the degree of limitation in each area: none, mild, moderate, marked, and extreme. *See* 20 C.F.R. § 404.1520a(c)(4). "These ratings are used both at step two, to determine whether a mental impairment is 'severe,' and at step three, to determine whether a severe mental impairment meets or medically equals a listed impairment." *Rosario*, 2022 WL 875925, at *11.

If the claimant's impairment does not meet or equal a listed impairment, then the Commissioner continues to the fourth step and determines whether the claimant has the RFC to perform his or her past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv). Finally, if the claimant does not have the RFC to perform past relevant work, the Commissioner completes the fifth step and ascertains whether

the claimant possesses the ability to perform any other work.  *See* 20 C.F.R. §

404.1520(a)(4)(v).

The claimant has the burden at the first four steps.  *See Burgess v. Astrue*,

537 F.3d 117, 128 (2d Cir. 2008).  If the claimant is successful, the burden shifts to

the Commissioner at the fifth and final step, where the Commissioner must

establish that the claimant has the ability to perform some work in the national

economy.  *See, e.g., Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

### b.    Duty to Develop the Record

"Social Security proceedings are inquisitorial rather than adversarial."  *Sims*

*v. Apfel*, 530 U.S. 103, 110–11 (2000).  Consequently, "the social security ALJ,

unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop

the record in light of the essentially non-adversarial nature of a benefits

proceeding."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation

marks omitted).  As part of this duty, the ALJ must "investigate the facts and

develop the arguments both for and against granting benefits."  *Sims*, 530 U.S. at

111.  Specifically, under the applicable regulations, the ALJ is required to develop a

claimant's complete medical history.  *See Pratts*, 94 F.3d at 37 (citing 20 C.F.R. §§

404.1512(d)–(f)).  This responsibility "encompasses not only the duty to obtain a

claimant's medical records and reports but also the duty to question the claimant

adequately about any subjective complaints and the impact of the claimant's

impairments on the claimant's functional capacity."  *Pena v. Astrue*, No. 07-CV-

11099 (GWG), 2008 WL 5111317, at *8 (S.D.N.Y. Dec. 3, 2008) (citations omitted).

Whether the ALJ has satisfied this duty to develop the record is a threshold question.  Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), "the court must first be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record." *Scott v. Astrue*, No. 09-CV-3999 (KAM) (RLM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (quoting *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)); *see also Rodriguez ex rel. Silverio v. Barnhart*, No. 02-CV-5782 (FB), 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003) ("The responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law." (citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir. 1999))).  The ALJ must develop the record even where the claimant has legal counsel.  *See, e.g., Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).  Remand is appropriate where this duty is not discharged.  *See, e.g., Moran*, 569 F.3d at 114–15 ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision.").

### c.   **Evaluation of Medical Opinion Evidence**

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)) (internal quotation marks omitted).  For SSI and Social Security Disability Insurance applications filed

prior to March 27, 2017, like Molina's, SSA regulations set forth the "treating physician rule," which require an ALJ to give more weight to the opinions of physicians with the most significant clinical relationship with the plaintiff.  20 C.F.R. §§ 404.1527(c)(2), 416.927(d)(2); *see also, e.g.*, *Taylor v. Barnhart*, 117 F. App'x 139, 140 (2d Cir. 2004).[5]  Under the treating physician rule, an ALJ is required to give "good reasons," 20 C.F.R. § 404.1527(c)(2), if he determined that a treating physician's opinion was not entitled to "controlling weight," or at least "more weight," than the opinions of non-treating and non-examining sources. *Gonzalez v. Apfel*, 113 F. Supp. 2d 580, 588 (S.D.N.Y. 2000).  In addition, a consultative physician's opinion is generally entitled to "little weight."  *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009).

### d.   Claimant's Credibility

An ALJ's credibility finding as to the claimant's disability is entitled to deference by a reviewing court.  *See Osorio v. Barnhart*, No. 04-CV-7515 (DLC), 2006 WL 1464193, at *6 (S.D.N.Y. May 30, 2006).  "[A]s with any finding of fact, '[i]f the Secretary's findings are supported by substantial evidence, the court must

---

[5] The treating physician rule no longer governs more recently filed claims.  *See, e.g.*, *Colgan v. Kijakazi*, 22 F.4th 353, 359 n.2 (2d Cir. 2022) ("For claims filed after March 27, 2017, however, ALJs 'will not defer or give any specific evidentiary weight, *including controlling weight*, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.'" (citing 20 C.F.R. §§ 404.1520c(a) (emphasis added), 416.920(c).)).  As Molina's claim was filed prior to March 27, 2017, the treating physician rule applies in this case.

uphold the ALJ's decision to discount a claimant's subjective complaints." *Id.*
(quoting *Aponte v. Sec'y of Health and Hum. Servs.*, 728 F.2d 588, 591 (2d Cir.
1984)).  Still, an ALJ's finding of credibility "must . . . be set forth with sufficient
specificity to permit intelligible plenary review of the record." *Pena*, 2008 WL
5111317, at *10 (internal quotation marks omitted) (quoting *Williams v. Bowen*, 859
F.2d 255, 260–61 (2d Cir. 1988)).  "The ALJ must make this [credibility]
determination 'in light of the objective medical evidence and other evidence
regarding the true extent of the alleged symptoms.'" *Id.* (quoting *Mimms v. Heckler*,
750 F.2d 180, 186 (2d Cir. 1984)).

SSA regulations provide that statements of subjective pain and other
symptoms alone cannot establish a disability.  *Genier v. Astrue*, 606 F.3d 46, 49 (2d
Cir. 2010) (citing 20 C.F.R. § 404.1529(a)).  The ALJ must follow a two-step
framework for evaluating allegations of pain and other limitations.  *Id.*  First, the
ALJ considers whether the claimant suffers from a "medically determinable
impairment that could reasonably be expected to produce" the symptoms alleged.
*Id.* (citing 20 C.F.R. § 404.1529(b)).  "If the claimant does suffer from such an
impairment, at the second step, the ALJ must consider 'the extent to which [the
claimant's] symptoms can reasonably be accepted as consistent with the objective
medical evidence and other evidence' of record." *Id.* (citing 20 C.F.R. § 404.1529(a)).
Among the kinds of evidence that the ALJ must consider (in addition to objective
medical evidence) are:

> 1. The individual's daily activities; 2. [t]he location,
> duration, frequency, and intensity of the individual's pain

or other symptoms; 3. [f]actors that precipitate and
aggravate the symptoms; 4. [t]he type, dosage,
effectiveness, and side effects of any medication the
individual takes or has taken to alleviate pain or other
symptoms; 5. [t]reatment, other than medication, the
individual receives or has received for relief of pain or
other symptoms; 6. [a]ny measures other than treatment
the individual uses or has used to relieve pain or other
symptoms (e.g., lying flat on his back, standing for 15 to
20 minutes every hour, or sleeping on a board); and 7.
[a]ny other factors concerning the individual's functional
limitations and restrictions due to pain or other
symptoms.

*Pena*, 2008 WL 5111317, at *11 (citing SSR 96-7p, 1996 WL 374186, at *3 (SSA July

2, 1996)).

### B. Analysis

Molina argues that her case should be remanded because: (1) the ALJ's RFC

determination is unsupported by substantial evidence due to his rejection of

Molina's treating physicians' opinions; and (2) the ALJ erred in evaluating Molina's

credibility because he failed to apply the proper standard.  Pl. Mem. at 2.[6]  The

Commissioner counters that the ALJ's decision is legally correct and supported by

substantial evidence because: (1) the ALJ's assessment of the medical opinions

complied with the treating physician rule and his RFC determination was

supported by substantial evidence; and (2) substantial evidence supported the ALJ's

evaluation of Molina's subjective complaints.  Def. Mem. at 14, 21.  For the reasons

---

[6] Molina does not take issue with the ALJ's assessment of her mental impairments.
Therefore, this opinion will address her claims only as they relate to her physical
impairments.

explained below, the Court concludes that ALJ misapplied the treating physician rule.[7]

### 1. The ALJ Failed to Properly Apply the Treating Physician Rule

The treating physician rule requires an ALJ to engage in a two-step process when assigning weight to a treating physician's medical opinion. *See, e.g., Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). First, the ALJ must determine if the opinion is entitled to controlling weight. *Id.* A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Second, an ALJ who determines a treating physician's opinion is not entitled to controlling weight must decide how much weight, if any, to give the opinion. *See, e.g., Estrella*, 925 F.3d at 95. When determining what weight to give a less than controlling medical opinion, the ALJ must explicitly consider the following factors: (1) the frequency, length, nature, and extent of treatment; (2) medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence;

---

[7] Because the Court is remanding for failure to properly apply the treating physician rule, it will not address Molina's second argument regarding the evaluation of her credibility. *See, e.g., Roman v. Saul*, No. 19-CV-3688 (JLC), 2020 WL 4917619, at *23 (S.D.N.Y. Aug. 21, 2020) ("Because the Court concludes that the ALJ did not follow the treating physician rule and remands on that basis, the Court need not decide the issue as to whether the ALJ erred in assessing [plaintiff's] credibility.") (citing *Mortise v. Astrue*, 713 F. Supp. 2d 111, 124–25 (N.D.N.Y. 2010)). Notably, however, a failure to properly evaluate a treating physician's opinion means the "credibility evaluation is necessarily flawed." *Mortise*, 713 F. Supp. 2d at 124–25. As such, the ALJ should re-evaluate Molina's credibility on remand. *Id.*

and (4) whether the physician is a specialist. *See Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (citations omitted). An ALJ who fails to explicitly consider each of these factors, known as the "*Burgess* factors," commits a procedural error. *See, e.g., Schillo v. Kijakazi*, 31 F.4th 64, 75 (2d Cir. 2022) (citations omitted). However, such an error is not always fatal; a reviewing court will find such an error harmless if the ALJ otherwise provided "good reasons" for his weight determination. *Id*. Nonetheless, a court will not "hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians [sic] opinion" or when the ALJ did not "comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

Here, Molina's treating physicians, Dr. Hecht and Dr. Brisson, opined, among other things, that Molina was limited in her ability to sit for extended periods of time. In May 2015, Dr. Hecht opined that Molina was limited to only "occasionally" sitting. AR at 683. Similarly, in a November 2016 opinion, Dr. Brisson determined that Molina could sit for a total of two hours during an eight-hour workday. *Id*. at 950. The ALJ assigned "limited weight" to these opinions, specifically "to the extent of the limitations they identify, particularly in the area of sitting." AR at 20. In according less than controlling weight to the opinions of Molina's treating physicians, the ALJ was required to explicitly consider the *Burgess* factors or otherwise provide "good reasons" for his weight determination. *See, e.g., Estrella*, 925 F.3d at 95. As discussed below, the ALJ did not meet this requirement.

26

### a. The ALJ Did Not Provide Good Reasons For Assigning Limited or Little Weight to the Opinions of Dr. Hecht and Dr. Brisson

"Good reasons" assure a reviewing court that the "substance of the treating physician rule was not traversed." *Id.* at 96 (quoting *Halloran*, 362 F.3d at 32.).  An ALJ provides good reasons for his or her weight determination when it is clear from the decision that the ALJ considered the extent to which the opinion was supported by medical findings, the nature of the examining and treating relationships, the supportability of the opinions, their consistency with the record as a whole, and the doctors' specialization. *See, e.g., Schillo,* 31 F.4th at 79 (ALJ's decision upheld despite failure to explicitly apply *Burgess* factors after finding ALJ covered nature of examining and treating relationships, supportability of opinions, their consistency with record, and doctors' specialization).  Here, the ALJ did not explicitly apply the *Burgess* factors.  Instead, he cited the following reasons for discounting the opinions of Dr. Hecht and Dr. Brisson: objective findings of record; Molina's conservative treatment measures; a lack of any record of treatment subsequent to November 2016; and Molina's acknowledged activities of daily living during the period at issue.  AR at 20.  These justifications do not qualify as good reasons under the treating physician rule.

First, the ALJ discounted the treating physicians' opinions that Molina was limited in her ability to sit for extended periods of time because he found the opinions were "not supported by objective findings of medical record." *Id.*  In concluding that the limitations offered by Dr. Hecht and Dr. Brisson were not

supported by the objective findings of record, the ALJ relied in part on the absence

of "gait abnormalities or extremity sensation abnormalities" in the record.  *Id.* at 20.

However, it is improper for an ALJ to discount a treating physician's opinion based

on an absence or omission of symptoms or evidence.  *See, e.g., Rosa v. Callahan*, 168

F.3d 72, 79 (2d Cir. 1999) (citations omitted).  In *Rosa*, the ALJ rejected a treating

physician's finding of disability in part because the doctor "did not report findings of

muscle spasms to corroborate any loss of motion."  *Id.*  The Second Circuit found

that "by attaching such significance to this omission, however, the ALJ made

fundamentally the same error as this Court has identified on at least two other

occasions." *Id.* (citing *Wagner v. Sec'y of Health & Hum. Servs.*, 906 F.2d 856, 861

(2d Cir. 1990) (ALJ had insufficient basis for concluding that treating physician's

failure to report certain symptoms precluded a diagnosis of hemiplegic migraine)

and *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (ALJ improperly made

medical determination by concluding that an absence of atrophy was inconsistent

with a finding of disability)).  Similarly, here, it was improper for the ALJ to

interpret an absence of specific symptoms, namely gait abnormalities and extremity

sensation/strength deficits, as inconsistent with the treating physicians' opinions of

Molina's ability to sit.  An absence of symptoms in the record was not a good reason

for assigning diminished weight to the opinions of Drs. Hecht and Brisson.

Second, the ALJ pointed to the fact that Molina's "treatment was limited to

conservative measures" to discount the opinions of her treating physicians.  AR at

20.  Molina's treatment included pain medication, physical therapy, and trigger

point injections. *Id.* at 919. In *Shaw v. Chater*, the Second Circuit found that characterizing "conservative physical therapy, hot packs, EMG testing" as substantial evidence that the plaintiff was not physically disabled and using such evidence to discount a valid medical opinion violated the treating physician rule. 221 F.3d 126, 134–35 (2d Cir. 2000). Here, the ALJ relied on similarly insufficient evidence. In citing Molina's conservative treatment regime, the ALJ relied in part on what this Circuit has found to be "not a good reason" for assigning limited weight to a medical opinion. *See, e.g., Cohen-Aikens v. Saul*, No. 19-CV-4443 (SDA), 2020 WL 3126172, at *12 (S.D.N.Y. June 13, 2020) ("The Second Circuit has cautioned against discounting the opinion of a treating physician merely because the physician recommended a conservative treatment regimen.") (citations omitted). The ALJ discounted the opinions of Drs. Hecht and Brisson because he found their opinions about the extent of Molina's limitations to be inconsistent with what he described as "conservative [treatment] measures." AR at 20. It is well-settled, however, that an ALJ "may not impose [his] respective notions that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered." *Burgess*, 537 F.3d at 129 (cleaned up). Molina's conservative treatment regime was therefore not a good reason for the ALJ to discount the valid opinions of her treating physicians.

Third, the ALJ only cursorily cited the fact that there is no record of treatment subsequent to November 2016. AR at 20.[8] While the record contains

---

[8] The ALJ's failure to supplement such a gap in the record did not violate his duty to develop the record because "[p]ursuant to the SSA regulations, the duty to

extensive medical records and treatment notes spanning the time period from 2011
to 2016, it is devoid of any treatment evidence after November of 2016.  Still, it was
improper for the ALJ to assume that a lack of treatment records after November
2016 indicated that Molina was not treated and/or no longer needed medical
treatment after that date.  In *Warden v. Berryhill*, for example, the ALJ assumed a
lack of treatment records after a certain date meant that the plaintiff "had
improved enough to stop going for treatment."  *Warden v. Berryhill*, No. 17-CV-
1310-A (RJA), 2019 WL 2865035, at *2 (W.D.N.Y. July 3, 2019).  There, the court
found the ALJ's decision to "discount[] the plaintiff's testimony about her functional
limitations" based on such an assumption was grounds for remand.  *Id*. at *3.  Here,
the ALJ made a similar assumption in determining that a lack of treatment records
after 2016 was inconsistent with the extent of limitations identified by Molina's
treating physicians.  AR at 20.  Just as it was erroneous for the ALJ in *Warden* to
make such an assumption the basis for discounting the plaintiff's testimony about
her functional limitations, it was similarly improper for the ALJ in this case to
discount the opinions of Molina's treating physicians.  Such an erroneous
determination is even more concerning here given the required deference to treating

---

develop medical records normally extends only to obtaining medical history for at
least the twelve months preceding the month of application."  *Ruano Juarez o/b/o
R.R.O. v. Berryhill*, No. 18-CV-189 (LMS), 2019 WL 2162120, at *7 (S.D.N.Y. May
16, 2019) (quoting *Gonzalez v. Comm'r of Soc. Sec.*, No. 17-CV-1976 (JCM), 2018 WL
4054866, at *12 (S.D.N.Y. Aug. 24, 2018)); *see* 20 C.F.R. § 416.912(d)), 42 U.S.C. §
423(c)(5)(A).  Since Molina filed her DIB application in December 2013, the ALJ had
no affirmative duty to develop the record beyond the time period of December 2012
to December 2013.  AR at 100.

physician opinions under the treating physician rule.  *See, e.g., Burgess* 537 F.3d at 128 ("the SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant") (citations omitted).  In this case, as in *Warden*, a lack of treatment evidence after November 2016 does not qualify as a good reason to discount the opinions of the treating physicians.

Finally, the ALJ based his weight determination on Molina's acknowledged daily activities during the time period at issue, "including personal care tasks, some cleaning, meal preparation, and independent travel," finding that they "suggest that she was able to perform the exertional requirements of at least sedentary work." AR at 20.  However, such "mundane tasks of life" do not necessarily indicate an ability to perform a full day of sedentary work.  *Martin v. Astrue*, No. 07-CV-3911 (LAP), 2009 WL 2356118, at *12 (S.D.N.Y. July 30, 2009).  In *Balsamo*, for example, the court found that an individual who is able to attend church and go shopping may nonetheless be unable to perform sedentary work.  *Balsamo,* 142 F.3d at 81. Here, as in *Balsamo*, there is no evidence that Molina "engaged in any of these activities for sustained periods comparable to those required to hold a sedentary job."  *Id.* (citations omitted).  The Second Circuit has cautioned against holding a claimant's ability to endure pain during activities against her unless such conduct "truly showed that [the claimant] is capable of working."  *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989).  In his decision, the ALJ simply listed the daily activities Molina engaged in but failed to explain how such activities demonstrated that

Molina was capable of performing sedentary work during the relevant time period. Without more, this justification is insufficient to discount the treating physician's opinions regarding Molina's limitations.

In sum, the ALJ violated the treating physician rule by failing to provide good reasons for assigning diminished weight to the opinions of Molina's treating physicians. The ALJ's failure to provide good reasons for his weight determination is grounds for remand. *See Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when . . . we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

### b. The ALJ Did Not Consider Evidence In Support of the Opinions of Dr. Hecht and Dr. Brisson

The ALJ also violated the treating physician rule by failing to account for, or analyze, evidence that supported the opinions of Dr. Hecht and Dr. Brisson. *See, e.g., Nieves v. Acting Comm'r of Soc. Sec.*, No. 20-CV-4179 (JLC), 2022 WL 949797, at \*14 (S.D.N.Y. Mar. 30, 2022) ("Although an ALJ must consider evidence that contradicts the opinion of a treating physician, he must also account for evidence supporting that opinion.") (citation omitted). Specifically, the ALJ did not consider the treatment relationships between Molina and each of her treating physicians, the specialization of her treating physicians, or the consistency of the treating physicians' opinions with each other. Each of these factors supports the merits of the treating physicians' opinions and the ALJ's failure to consider them is also grounds for remand. *See, e.g., Hidalgo v. Colvin*, No. 12-CV-9009 (LTS) (SN), 2014 WL 2884018, at \*20 (S.D.N.Y. June 25, 2014) (remand for ALJ's failure to consider

treatment relationship, evidence in the record in support of medical opinion, and whether doctor was opining on issue within area of specialty).

First, the ALJ did not account for the significant treatment relationships between Molina and each of her treating physicians. When evaluating a treating physician's opinion, an ALJ is required to consider the length of treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship. 20 C.F.R. § 404.1527(c). While the ALJ noted in his decision that Dr. Hecht and Dr. Brisson were treating sources, "merely acknowledging the existence of treatment relationships is not the same as explicitly considering the frequency, length, nature, and extent of treatment." *Ferraro v. Saul*, 806 F. App'x 13, 15 (2d Cir. 2020) (internal quotations omitted). Such a brief acknowledgement is insufficient where, as here, the treatment relationship involved numerous appointments over several years. *See, e.g., id.* Here, the ALJ failed to consider the fact that Dr. Hecht examined Molina frequently and consistently from October 2013 through the time of the May 2015 medical opinion. AR at 555–606, 702–878. Notably, there were times during that period that Dr. Hecht examined Molina daily, a fact that would substantially support the merits of his opinion. *Id.* at 722–26, 734–38. The ALJ also failed to consider the treatment relationship between Molina and Dr. Brisson, who examined Molina four times between July 2015 and March 2016. *Id.* at 919–30. By failing to consider the treatment relationship that Molina had with both Dr. Hecht and Dr. Brisson, the ALJ violated the treating physician rule. *See, e.g., Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d

249, 266 (S.D.N.Y. 2016) (ALJ's failure to consider impact treating physician's regular observations over a sustained period of time had on merits of opinion violated treating physician rule).

Second, the ALJ did not consider Dr. Brisson's specialization in orthopedic spinal surgery. AR at 919; *see, e.g., Craig,* 218 F. Supp. 3d at 266 (ALJ erred by not considering treating physician's specialization). An ALJ's failure to consider the nature and extent of a treatment relationship in conjunction with a failure to consider the specialty of the treating physician constitutes a failure to "comprehensively set forth reasons for the weight assigned to the treating physician's opinion." *Hidalgo,* 2014 WL 2884018, at *20 (citing *Halloran,* 362 F.3d at 33); *see also Ramos v. Comm'r of Soc. Sec,* No. 13-CV-3421 (KBF), 2015 WL 7288658, at *7 (S.D.N.Y. Nov. 16, 2015) (ALJ's failure to consider the treatment relationship or specialty violated requirement to give "specific reasons for the weight given to the treating sources medical opinion") (citations omitted). Such a failure is a violation of the treating physician rule as well. The ALJ in this case, like the one in *Hidalgo,* failed to consider that Dr. Brisson's opinion was on an issue in his area of expertise. 2014 WL 2884018, at *20. The ALJ thus violated the treating physician rule by assigning weight to Dr. Brisson's opinion without considering his relevant specialty.

Finally, the ALJ did not consider the consistency of the treating physicians' opinions with each other. "An ALJ's failure to consider the consistency of the physicians' opinions with each other . . . constitutes legal error." *Nieves,* 2022 WL

949797, at *14 (citation omitted).  Here, the ALJ gave "little weight" to the opinions

of Dr. Hecht and Dr. Brisson without considering the consistency of their opinions

with each other.  While the opinions of the two treating physicians may have

differed with respect to other limitations, their opinions regarding Molina's ability

to sit were nearly identical.  *See* AR at 681–83, 950–51.  Dr. Brisson determined

that Molina could sit for up to two hours during an eight-hour workday and Dr.

Hecht opined that Molina could sit occasionally, defined as one third of the time

(one third of an eight hour workday is two hours and forty minutes).  *Id.* at 683,

950.  Assigning limited weight to the opinions of Dr. Hecht and Dr. Brisson without

acknowledging their consistency with one another was also improper.  *Nieves,* 2022

WL 949797, at *14.

     While the ALJ was not required to address the *Burgess* factors explicitly, his

failure even to consider the evidence that existed in support of the opinions of Dr.

Hecht and Dr. Brisson violated the treating physician rule and provides a separate

basis for remand.

### c. The ALJ Improperly Assigned More Weight to the Opinions of Dr. Oliveto and Dr. Schulman

     The ALJ weighed the opinions of one-time consultants Drs. Oliveto and

Schulman more heavily than the opinions of Molina's treating physicians.

Typically, however, a consultative physician's opinion is only entitled to "little

weight."  *See e.g., Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009).

Moreover, "[t]he ALJ retains the burden to provide good reasons when he or she

privileges the opinions of consultative sources above those of the treating sources."

*Padilla v. Berryhill*, No. 15-CV-9312 (VB) (LMS), 2018 WL 3598766, at *12

(S.D.N.Y. June 22, 2018) (cleaned up), *adopted by* 2018 WL 3597639 (July 26, 2018).

An ALJ who does not cite to particular evidence in the record corroborating the

consultative examiner's opinion fails to provide sufficient justification for weighing

such an opinion more heavily than other treatment providers. *See, e.g., id.* An

ALJ's failure to "sufficiently justify elevating the opinion of a one-time consultative

examiner over the findings of Plaintiff's treating sources" is grounds for remand.

*Id.*

Here, the ALJ failed to provide sufficient justification for assigning more

weight to the opinions of Drs. Oliveto and Schulman than to those of Molina's

treating physicians. Drs. Oliveto and Schulman each examined Molina only once

for worker's compensation insurance purposes. AR at 536–38 (Dr. Oliveto's report),

697–701 (Dr. Schulman's report). Despite giving only "little weight" to the opinions

of Drs. Hecht and Brisson, the ALJ assigned "some weight" "to the assessments of

Drs. Oliveto and Schulman to the extent that they conclude that [Molina] retained

the ability to work." *Id.* at 20. In doing so, the ALJ was required to cite particular

evidence in the record corroborating the consultative examiner's opinions. *See, e.g.,*

*Padilla,* 2018 WL 3598766, at *12. However, the ALJ failed to point to any

evidence in the record corroborating the opinions of Dr. Oliveto and Dr. Schulman.

In fact, the only evidence to which he cited in connection with their opinions was in

order to discount them. AR at 20. Specifically, the ALJ noted that "the

persuasiveness of these opinions is limited due to the fact that they do not provide a

function by function evaluation of the claimant's retained abilities" and also because they were "rendered . . . for worker's compensation purposes, which involves different standards than those that apply to the disability program." *Id.* Moreover, Dr. Oliveto and Dr. Schulman did not specifically opine on Molina's exertional limits. A report that does not specifically address a plaintiff's exertional limits is insufficient to discredit a treating physician's medical opinion. *See, e.g., Giddings* 333 F. App'x at 652–53. For these reasons, the ALJ lacked sufficient evidence to rely on the opinions of one-time consultative examiners over the opinions of Molina's treating physicians.

### d. The ALJ's RFC Determination Was Not Supported By Substantial Evidence

In addition to the deficiencies already identified, the ALJ's RFC determination regarding Molina's ability to sit was not supported by substantial evidence in the record. "It is well-settled that [an] RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific . . . evidence." *Gomez v. Colvin*, No. 15-CV-06442T (MAT), 2016 WL 4272233, at *3 (W.D.N.Y. Aug. 13, 2016) (internal quotations and citations omitted). Here, however, the ALJ failed to provide evidence that supported his RFC determination that Molina could sit for up to six hours.

The ALJ concluded that Molina had the RFC to sit for up to six hours without citing any medical opinion to support such a determination. AR at 18. Both Dr. Hecht and Dr. Brisson opined that Molina was limited in her ability to sit for extended periods of time. Dr. Brisson opined that Molina could sit for a total of two

37

hours during an eight-hour workday and Dr. Hecht similarly found that Molina was limited to only occasionally sitting. *Id.* at 20. Moreover, Dr. Oliveto and Dr. Schulman did not specifically opine on Molina's ability to sit. As such, no medical opinion existed in the record to support an RFC determination that Molina could sit for up to six hours.[9] "The existence of substantial evidence to support an RFC determination cannot be proven by an absence of limitations, but rather must be shown through evidence of what the claimant can do that meets the RFC asserted." *Nieves*, 2022 WL 949797, at *17.

"Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." *Id.* (citations omitted). Here, the only opinions in the record regarding Molina's ability to sit are those given by Molina's treating physicians who each concluded she could only sit for about two hours at a time. Rather than crediting their opinions, the ALJ determined that Molina could sit for

---

[9] To the extent that the ALJ may have relied on the opinions of Dr. Oliveto and Dr. Schulman in making his RFC determination, they did not constitute substantial evidence. "Medical source opinions that are conclusory . . . may not be substantial evidence to support an ALJ's RFC finding." *Warden*, 2019 WL 2865035, at *2 (cleaned up). The opinions by Dr. Oliveto and Dr. Schulman that the ALJ gave weight to are those that concluded that Molina "retained the ability to work." However, opinions about a claimant's ability to work are reserved to the Commissioner. 20 C.F.R. § 416.927(d)(1); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). In *Mellilo v. Astrue*, the ALJ properly rejected opinions that "stat[ed] in a wholly conclusory fashion the ultimate opinion that [the] plaintiff [was] unable to work." No. 06-CV-0698 (LEK) (DEP), 2009 WL 1559825, at *12 (N.D.N.Y. June 3, 2009). Here, the ALJ relied on statements from Drs. Oliveto and Schulman that are similarly conclusory.

up to six hours.  "But [he] did not identify any medical opinion supporting [his] conclusion.  Instead, [he] interpreted raw medical data for [him]self."  *McGrath v. Comm'r of Soc. Sec.*, No. 20-CV-3042 (FB), 2021 WL 5281317, at *2 (E.D.N.Y. Nov. 12, 2021).  "Given the lack of any controlling medical opinion—or at least one that the ALJ did not largely discount—the ALJ has improperly filled this evidentiary void with his own medical judgment and interpretation of these records."  *Lee v. Saul*, No. 19-CV-9451 (CS) (JCM), 2020 WL 5362619, at *17 (S.D.N.Y. Sept. 8, 2020) (citations omitted).  The ALJ thus committed legal error by failing to identify any medical opinion supporting his RFC determination that Molina could sit for up to six hours.

The Commissioner's reliance on *Schillo* in support of her contention that "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence" is misplaced.  Def. Mem. at 19–20 (quoting *Schillo*, 31 F.4th at 78).  Here, the ALJ's decision is not supported by substantial evidence because it violates the treating physician rule.  *See e.g.*, *Jackson v. Kijakazi*, No. 21-CV-2415 (PED), 2022 WL 2354565, at *18 (S.D.N.Y. June 30, 2022) ("[B]ecause the ALJ failed to apply the treating physician rule, the ALJ's RFC determination cannot be found to have been supported by substantial evidence.").

### 2. The ALJ's Errors Were Not Harmless

An ALJ who fails to explicitly consider the *Burgess* factors when deciding how much weight to accord a medical opinion commits procedural error and subjects his

decision to a harmless error analysis. *See, e.g., Schillo,* 31 F.4th at 75 (citations omitted). A reviewing court will find such an error harmless if the ALJ otherwise provides good reasons for his or her weight determination. *Id.* "The proper application of the treating physician rule is potentially dispositive in determining whether [Molina] is disabled within the meaning of the Act." *Nieves,* 2022 WL 949797, at *18 (citations omitted). An error that is not harmless is therefore grounds for remand.

As the ALJ failed to provide good reasons for the weight he assigned each of the opinions of Molina's treating physicians, his decision cannot be deemed harmless. Moreover, the ALJ's error is not harmless because he may have arrived at a different conclusion regarding Molina's disability had he properly credited the treating physicians' opinions regarding her sitting limitations. *See, e.g., Roman v. Saul,* No. 19-CV-3688 (JLC), 2020 WL 4917619, at *20 (S.D.N.Y. Aug. 21, 2020) (error not harmless where ALJ's conclusion that plaintiff was not unable to work might have been different had he properly credited treating physician's opinion).

Here, the ALJ presented the VE with a hypothetical individual who, among other limitations, could only sit for two hours in an eight-hour workday. AR at 95. The VE concluded that such an individual could not perform Molina's past work and was unable to identify any other work in the national economy that such an individual could perform. *Id.* This conclusion suggests that if the ALJ had credited the sitting limitations opined by Dr. Hecht and Dr. Brisson, he may have concluded that Molina could not work during the relevant time period. Accordingly, the ALJ's

failure to properly apply the treating physician rule was not harmless. *See, e.g.,*

*Pines v. Comm'r of Soc. Sec.*, No. 13-CV-6850 (AJN) (FM), 2015 WL 872105, at *10

(S.D.N.Y. Mar. 2, 2015) ("It cannot be said that the ALJ's analysis of these medical

opinions was harmless error because the vocational expert essentially testified that

if these opinions were adopted, the claimant would be unable to work.") (cleaned

up).

### III. CONCLUSION

For all the foregoing reasons, Molina's motion is granted, the Commissioner's

cross-motion is denied, and the case is remanded pursuant to sentence four of 42

U.S.C. § 405(g).

**SO ORDERED.**

Dated: November 15, 2022
New York, New York

JAMES L. COTT
United States Magistrate Judge